IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY RICHARDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 24 C 00366 |
| ) | |
| ILLINOIS DEPARTMENT OF ) | |
| CORRECTIONS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Timothy Richards—a Black man—has brought this lawsuit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2, against his former employer, the Illinois Department of Corrections (IDOC), alleging that IDOC discriminated against him on the basis of race when it terminated his employment. IDOC has moved for summary judgment.

## Background

This case stems from an incident where Richards, then a Lieutenant at Stateville Correctional Center, used force against an inmate. The following facts are undisputed.

Around 12:16 p.m. on September 7, 2017, Richards received a call from Sergeant Terrell Pork to assist him with a problem involving an inmate. Richards, Pork, and Officer Henry Wimp went to the inmate's cell, where Pork handcuffed the inmate through the cell bars. Richards and Pork then removed the inmate from his cell and began to escort him down the hallway, at which point the inmate became combative and

refused to walk.  Richards, Pork, and Wimp responded by taking the inmate to the ground and putting him on his stomach.  Officer Conner Marchetti came and kneeled on the inmate's feet, and Wimp and Pork held the inmate's sides.  The inmate's hands were still handcuffed behind his back.  Richards then stood up behind the inmate, stomped on his lower buttocks and upper thigh area four times, and kicked and stomped inmate's buttocks three times.  Richards then pulled the inmate's shirt over his face, stood him up, and escorted him down the hallway.  This incident was captured on video.

Immediately after the incident, Richards completed a Form 434 Incident Report—a form for reporting unusual incidents.  That report's only reference to Richards's use of force was, "Inmate [] was taken to the ground with minimum force until leg irons was [sic] applied."  Def.'s Rule 56.1 Statement, Ex. 9 at IDOC 579.  On the same day, Kehinde Salame—a Deputy Commander with IDOC—reported the incident to the Illinois State Police.  This resulted in an investigation, Richards's arrest, and criminal battery charges that were ultimately dismissed *nolle prosequi*.

Following the dismissal of the battery charges, IDOC undertook its own investigation.  The report of investigation concluded that Richards had violated IDOC's use of force and reporting policies.  On July 15, 2019, Patty Torri—an IDOC superintendent—referred Richards to IDOC's employee review board.  On August 8, 2019, Richards had a review hearing before hearing officer Cheri Hunter.  At the hearing, Hunter concluded that Richards had used excessive force by stomping and kicking the inmate and that he had failed to accurately document or report the use of force, in violation of IDOC's policies.  She recommended that Richards receive a

2

suspension pending discharge.

Hunter's recommendation was submitted to the then-warden of Stateville, John Eilers—the designee for the IDOC Director regarding disciplinary matters—who concurred. After consulting with the Director, Eilers finalized the decision to discharge Richards.

## Discussion

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when, after drawing all reasonable inferences from the record in favor of the nonmoving party, a reasonable trier of fact could return a verdict for the nonmovant. *Id.*

The party seeking summary judgment bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the "party that bears the ultimate burden at trial must show that there is evidence creating a genuine issue of material fact." *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If the party with the burden of proof cannot show that its claim or defense is factually supported, summary judgment against that party is appropriate. *Celotex*, 477 U.S. at 323–24.

To survive summary judgment in a Title VII case, like this one, "a plaintiff must present evidence that 'would permit a reasonable factfinder to conclude that the plaintiff's . . . proscribed factor caused the discharge or other adverse employment

action.'" *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573 (7th Cir. 2021). Under the Seventh Circuit's decision in *Ortiz*, a plaintiff may do so by providing evidence that, viewed as a whole, permits a reasonable jury to find discrimination. *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). "Alternatively, he may rely on the burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id.* See *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) ("[T]he well-known and oft-used *McDonnell Douglas* framework for evaluating discrimination remains an efficient way to organize, present, and assess evidence in discrimination cases.").

Under the burden-shifting framework, the plaintiff bears the initial burden to establish a prima facie case of discrimination by showing that "(1) he is a member of a protected class; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." *Wince*, 66 F.4th at 1040 (quoting *Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022)). If he does so, "the burden shift[s] to the defendant to 'articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" *Khungar*, 985 F.3d at 573 (quoting *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 661 (7th Cir. 2016)).

Regardless of which method the plaintiff opts for, "all evidence belongs in a single pile and must be evaluated as a whole." *Ortiz*, 834 F.3d at 766.

In this case, the parties have presented their arguments primarily through the

4

*McDonnell Douglas* framework. IDOC argues that no reasonable jury could find that Richards met IDOC's legitimate job expectations; similarly situated non-Black employees were treated more favorably; or IDOC's stated nondiscriminatory reason for terminating Richards—violation of the excessive force and reporting policies—was pretextual. Richards provides a host of related responses, including that his conduct did not violate IDOC's policies, IDOC failed to adequately communicate its policies and train him accordingly, his superiors deviated from an alleged practice of allowing a chance to correct unsatisfactory reports, and non-Black employees were not terminated under similar circumstances.

These arguments boil down to two basic disputes: whether Richards's conduct fell below IDOC's legitimate expectations and, if so, whether that was the true cause of his termination. These questions involve Richards's prima facie case, the claimed nondiscriminatory reasons for his termination, and whether those reasons were pretextual. *See Khungar*, 985 F.3d at 573–74. Under these circumstances, "the court 'may skip the analysis of the prima facie case and proceed directly to the evaluation of pretext.'" *Bragg v. Munster Med. Rsch. Found. Inc.*, 58 F.4th 265, 271 (7th Cir. 2023) (quoting *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477–78 (7th Cir. 2010)). *See also Vassileva v. City of Chicago*, 118 F.4th 869, 874 (7th Cir. 2024); *Brooks v. Avancez*, 39 F.4th 424, 435 (7th Cir. 2022). Additionally, because IDOC has asserted that Richards's improper conduct was the reason for his termination, "the *McDonnell Douglas* and *Ortiz* frameworks come together." *Napier v. Orchard Sch. Found.*, 137 F.4th 884, 892 (7th Cir. 2025). *See also Vichio v. US Foods, Inc.*, 88 F.4th 687, 691 (7th Cir. 2023). Broadly speaking, the Court "run[s] through [the] analysis only once . . .

5

with [the] true goal top of mind: determining whether the evidence, 'as a whole,' 'would permit a reasonable factfinder to conclude that' [Richards's] . . . race . . . caused [his] termination." *Khungar*, 985 F.3d at 574 (quoting *Ortiz*, 834 F.3d at 765).[1]

A. **Violation of IDOC policy**

Pretext is "'[a] lie, specifically a phony reason for some action,' not 'just faulty reasoning or mistaken judgment on the part of the employer.'" *Napier*, 137 F.4th at 892 (quoting *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389–90 (7th Cir. 2020)). Put another way, a plaintiff must do "more than show[] that the decision was 'mistaken, ill considered or foolish.'" *Hague v. Thompson Dist. Co.*, 436 F.3d 816, 825 (7th Cir. 2006) (quoting *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005)). Rather, "[t]o avoid summary judgment, a plaintiff must present evidence showing that the employer did not honestly believe [its] proffered reason." *Id.*

Richards first argues that he did not violate IDOC's policies because IDOC trained him to use kicking as a method of restraint and to use the term "minimal force necessary" when completing an incident report. As evidentiary support, Richards points to his own affidavit, in which he states that his "training included use of fist, legs and feet as proper methods of force to restrain a combative inmate" and that to his knowledge, "no other Caucasian employee or Lieutenant has ever been disciplined for using the term 'minimal force necessary' in their incident reports," Pl.'s Resp. to Def.'s Rule 56.1 Statement, Ex. 1 ¶¶ 5–6, along with his deposition testimony that he believed his actions to be compliant with IDOC policies. Richards also relies on deposition

---

[1] The court also does so mindful of the Seventh Circuit's admonition in *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 327 (7th Cir. 2002), that "the prima facie case under *McDonnell Douglas* must be established and not merely incanted."

6

testimony from Lieutenant Daniel Berkley and Lieutenant Daniel Artl and an incident report by Major Peggy Franklin to show that using the term "minimal force necessary" was a common practice at IDOC.

As an initial matter, Richards's claim that he was compliant with IDOC's policies is questionable at best. IDOC does not contend that it terminated Richards because using legs and feet to restrain a combative inmate or using the term "minimal force necessary" were *per se* improper. Rather, its justification is that Richards's stomping and kicking was excessive under the particular circumstances, and that the phrase "minimal force necessary" was an improper description of the force that he applied in this particular situation. It is entirely possible that Richards was trained to use his "fist, legs and feet as proper methods of force to restrain a combative inmate" and that there was a practice of using the term "minimal force necessary." But those general points say little about the specific issue at hand here: whether IDOC policy permitted Richards to stomp and kick on an inmate who was being held by three other officers, face down on the ground, with his hands handcuffed behind his back, or whether IDOC policy permitted him to use the term "minimal force necessary" in his report after those particular actions.

Viewed in that light, Richards's evidence would not permit a reasonable jury to find in his favor. The statements in his affidavit are too general to bear on whether his conduct in this particular situation was proper, and his own opinion about whether he complied with IDOC policies is largely irrelevant. *See Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460 (7th Cir. 1994). In addition, Richards misstates Berkley and Artl's deposition testimony. Both Berkley and Artl acknowledged that some officers may have

7

used the phrase "minimum force" in their reports, but they expressly denied that this was a proper practice at the time of the incident. And although Franklin had used the term "minimal force necessary" in an incident report, there is no evidence that would permit a reasonable factfinder to conclude that the incident was similar to what happened with Richards (as the Court will discuss below).

Richards also contends that the force he used was permitted under IDOC's written use-of-force policy at the time, which stated: "Force shall be employed only as a last resort or when other means are unavailable or inadequate, and only to the degree reasonably necessary to achieve a permitted purpose. . . . Use of force shall be terminated as soon as force is no longer necessary." Pl.'s Resp. to Def.'s Rule 56.1 Statement, Ex. 2 § 501.30(a)–(b). *See also* Def.'s Rule 56.1 Statement, Ex. 2 at 44:19–45:14. Richards attempts to justify his use of force by claiming that the inmate was still resisting and threatening to spit on the officers after telling them he had AIDS.

But this is beside the point, and it leads to the more fundamental problem with Richards's arguments. What matters is not what Richards believed, or even whether his conduct was in fact proper.[2] Rather, the determinative question is whether a reasonable jury could find that IDOC's determination that Richards had violated its policies was not the true reason for his termination. Richards has not disputed that his conduct was deemed to violate IDOC policies at multiple levels of review, and he has

---

[2] A sufficient incongruity between the employer's stated reason and the employee's conduct can give rise to an inference of discrimination, such as when an employer enforces a policy in an unreasonable way. *See Huff v. Buttigieg*, 42 F.4th 638, 648 (7th Cir. 2022); *Coleman v. Donahoe*, 667 F.3d 835, 855 (7th Cir. 2012). But a reasonable jury could not find that IDOC's enforcement decision was so incongruous with its policies that it was unreasonable, even if a reasonable jury could disagree with it.

8

not provided evidence that would permit a reasonable jury to find that IDOC's reliance on its policies was a phony or post-hoc justification. *See Bragg*, 58 F.4th at 272 ("An opaque or nonexistent explanation can raise an inference of pretext to the extent that it creates the appearance of post-hoc rationalization by the employer."). Instead, his arguments amount essentially to a disagreement with IDOC on the application of its policies to him. That is not enough to survive summary judgment. *Hague*, 436 F.3d at 823–27 ("By admitting to the conduct at issue . . . [the plaintiff] is left attacking [the defendant's] leadership and business judgment. That will not suffice.").

Richards's arguments that IDOC failed to communicate its policies or adequately train him fail for similar reasons. First, they are undercut by Richards's own admissions that he was aware of IDOC's written use-of-force and reporting policies and received annual refresher courses. Richards argues that this was insufficient because the written policies were vague, and he "received no additional bootcamp training when he arrived at Statesville" and "was never trained on take down techniques." Pl.'s Resp. to Def.'s Rule 56.1 Statement at 4 ¶ 11. Even viewing the facts in the light most favorable to Richards, at most this indicates that IDOC could have done things better. But Richards needs to show pretext, and no reasonable jury could infer from these facts that IDOC's policies were applied in a pretextual way.

Richards also points to his clean track record of 16 years at IDOC prior to the incident and the fact that he had been promoted during that time. But his "past performance is largely irrelevant: The issue is not the employee's past performance but whether the employee was performing well at the time of his termination." *Igasaki v. Ill. Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 959 (7th Cir. 2021) (quoting *Peele*, 288

9

F.3d at 329) (cleaned up). *See also Anderson v. Street*, 104 F.4th 646, 654 (7th Cir. 2024) (holding that past performance was insufficient to create a genuine factual dispute regarding pretext or discriminatory intent).

Richards next contends that if the lack of detail in his report was the problem, his superiors would have followed the usual practice at IDOC of asking him to make changes to his report before taking disciplinary action. Richards, however, provides no evidence that would permit a reasonable jury to find that this was in fact a practice at IDOC. Moreover, this argument at best only gets Richards halfway, as he would still have to provide evidence that would permit a reasonable jury to find that his use of force alone was not an honest reason for his termination.

In sum, to the limited extent that Richards's arguments have evidentiary support, they amount at most to a disagreement with IDOC on the meaning and enforcement of its policies. None of this is sufficient, even when considered as a whole, to permit a reasonable jury to find pretext or discrimination.

**B.    Comparators**

Richards's other main strand of argument—and the one he relies on the most to establish pretext—is that other employees engaged in similar misconduct but were treated more favorably. As with his contentions regarding whether he met IDOC's legitimate job expectations, Richards's arguments about potential comparators merge into the pretext analysis. *See Napier*, 137 F.4th at 894 (citing *Khowaja v. Sessions*, 893 F.3d 1010, 1015 (7th Cir. 2018)). *See also Coleman*, 667 F.3d at 857–58 ("[T]he similarly-situated inquiry and the pretext inquiry are not hermetically sealed off from one another.").

Comparators "must be directly comparable to the plaintiff in all material respects" to support an inference of discrimination. *Id.* at 846 (quoting *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009) (internal quotation marks omitted). Determining whether another employee is comparable "calls for a 'flexible, common-sense examination' of all relevant factors." *Id.* (quoting *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007)). "When using comparators to demonstrate pretext, a plaintiff must usually show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Napier*, 137 F.4th at 894 (quoting *Coleman*, 667 F.3d at 846) (cleaned up).

In this case, none of the other employees Richards points to are appropriate comparators. He first contends that Officer Scott Nodine and Lieutenant Artl "were involved in an incident that was virtually indistinguishable but were not terminated." Pl.'s Resp. to Def.'s Mot. Summ. J. at 10. According to Richards, in 2014, Nodine and Artl were escorting a handcuffed inmate when the inmate attempted to spit on Nodine. Nodine responded by taking the inmate to the ground, and Artl used pepper spray on the inmate while he was on the ground, which was considered an elevated use of force. The incident report filled out by their superior, Major Franklin, used the term "minimal force necessary."

This story, however, is only partially supported by evidence. In particular, Richards has not provided evidence indicating that the inmate was handcuffed. And in any event, Richards leaves out key differences. First, Nodine and Artl's use of force—

11

unlike Richards's—was found to be compliant with IDOC's policies. Second, this incident in 2014 predated the IDOC's change in reporting policy, which was clarified around 2015 or 2016 to provide that the phrase "minimal force necessary" was not adequately descriptive. Richards's incident happened after that change. Third, although Franklin's report used the term "minimal force necessary," Nodine and Artl documented in their reports that the inmate was taken to the ground and that Artl "administered a one second burst of [pepper spray]." Pl.'s Resp. to Def.'s Rule 56.1 Statement, Ex. 9 at IDOC 1094. In other words, the reports provided a particularized explanation of the force that was used. Fourth, Richards's actions were caught on camera, but there is nothing to indicate that the Nodine-Artl incident was similarly substantiated. That difference in corroboration alone can be a distinguishing factor for an employer deciding whether and how to discipline an employee. *See Henry*, 507 F.3d at 564–65. This comparison therefore cannot support a reasonable inference of pretext or discrimination.

The other specific incidents that Richards points to—a 2010 incident where Artl allegedly choked an inmate and failed to report it until the next day, a 2013 lawsuit alleging that Artl pepper sprayed an inmate because he refused to take a moldy mattress, and an incident where Berkley was brought before the employee review board on accusations that he knocked an inmate's tooth out—all fail for similar reasons. Richards provides no evidence that would permit a reasonable jury to find that any force used was similarly severe under the circumstances, that there was a similar discrepancy between the force used and the report, or that any claims of policy violations were similarly credible. These comparisons likewise cannot support a

12

reasonable inference of pretext or discrimination.

Richards also relies on the fact that Artl and Berkley have faced allegations of excessive force in the past. But without any additional detail about, for example, the nature of those allegations or whether they were substantiated, there cannot serve as a plausible basis for comparison. *See Coleman*, 667 F.3d at 846 (stating that the purpose of the similarly-situated analysis "is to eliminate other possible explanatory variables '. . . , which helps isolate the critical independent variable'—discriminatory animus").

Finally, Richards stresses that "[e]veryone in the chain of command who made the decision to terminate [him] was Caucasian, while [he is] African American," and he claims that Black officers were disciplined for the same alleged actions more often than non-Black officers. Pl.'s Resp. to Def.'s Mot. Summ. J. at 9, 11. The first fact does not assist his case. A plaintiff "must do more than merely point to race and proclaim: 'Aha! Discrimination.'" *Hague*, 436 F.3d at 829. The second point might help Richards if it were substantiated by some form of statistical evidence, *see id.*, but it is not. All Richards has is a single deposition answer from Francis Shivers—another Lieutenant—that she felt that Black officers were disciplined more frequently. That is not enough to create a genuine factual dispute.

## Conclusion

In sum, considering Richards's evidence as a whole, no reasonable jury could find that IDOC discriminated against him on the basis of race when it terminated his employment. The Court therefore grants IDOC's motion for summary judgment [dkt. 34] and directs the Clerk to enter judgment stating: Judgment is entered in favor of

13

defendant Illinois Department of Corrections and against plaintiff Timothy Richards.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 16, 2025